CHIASSON, Judge.
Plaintiff, Wometco Communications, Inc. (Wometco), appeals a judgment dissolving the temporary restraining order and denying it a preliminary and permanent injunction. The defendants, Joseph L. Luts, Larry E. Gunn, Ralph L. Agee and Harry A. Bennett, have not answered nor have they appealed said judgment.
The facts giving rise to this suit are as follows:
On September 20, 1976, the sole owners of the capital stock of Slidell Cablevision, Inc. were Joseph Luts and Larry E. Gunn, who each owned fifty percent (50%) of the capital stock of the said corporation. On that date an offer for the purchase of their stock typed on Wometco stationary was received by the defendant, Mr. Gunn. This document was originally signed by Mr. John M. Lewis, President of Wometco, and subsequently signed by Mr. Luts and Mr. Gunn. However, prior to returning the document to Wometco, Provision 5 was amended in handwriting and initialed by Mr. Luts and Mr. Gunn to read: “The non-competition agreement shall be for St. Tammany Parish only.” This document was never returned to them nor was the acceptance of this amendment ever communicated to them. Instead, Wometco forwarded a somewhat longer and more detailed formal purchase agreement on October 1,1976, which included a consulting agreement and incorporated the change made on the September 20th document, but extending the term to five years. This document was unsigned by any Wometco representative.
Subsequently, on October 20, 1976, Mr. Luts and Mr. Gunn entered into an agreement with defendant, Mr. Ralph L. Agee, whereby they agreed to sell ninety percent (90%) of their stock to Mr. Agee for a total consideration of twelve thousand dollars ($12,000.00) to be paid in two payments of six thousand dollars ($6,000.00) each.
Thereafter, in a letter dated November 5, 1976, Mr. Luts and Mr. Gunn returned the formal purchase agreement of October 1, 1976, to Wometco unsigned by either of them.
The first payment was made by Mr. Agee to Mr. Luts and Mr. Gunn and ninety percent (90%) of the capital stock of Slidell *879 Cablevision, Inc. was transferred to Mr. Agee on December 23, 1976, in accordance with their agreement of October 20, 1976.
Suit for specific performance on the basis of the documents of September 20th and October 1st was originally filed by Womet-co against Mr. Luts and Mr. Gunn on December 29, 1976. On January 17, 1977, plaintiffs filed a supplemental petition adding Ralph L. Agee as defendant, alleging that most of the stock had been transferred by the original defendants to Mr. Agee. Finally, on April 25, 1977, plaintiffs joined Harry Bennett as defendant, alleging that he had acquired an interest in the stock from Mr. Agee.
Plaintiffs assignments of error can be summarized as follows:
1. That the trial court erred in failing to find the document of September 20, 1976, a valid and enforceable contract of sale or in the alternative a valid and enforceable contract to sell entitling Wometco to specific performance;
2. That the trial court erred in failing to find Mr. Agee in bad faith, thereby entitling plaintiff to have the sale of the stock to Mr. Agee set aside.
Plaintiff asserts that on the basis of the document of September 20, 1976, a sale of the stock was perfected entitling it to specific performance.
Article 2439 of the Civil Code provides: “The contract of sale is an agreement by which one gives a thing for a price in current money, and the other gives the price in order to have the thing itself. “Three circumstances concur to the perfection of the contract, to wit: the thing sold, the price and the consent.”
Article 2462 of the Civil Code provides: “A promise to sell, when there exists a reciprocal consent of both parties as to the thing, the price and terms, and which, if it relates to immovables, is in writing, so far amounts to a sale, as to give either party the right to enforce specific performance of same.”
The letter of September 20th states:
“Dear Mr. Gunn:
This letter is to convey the offer of Wometco Communications, Inc. (‘Wom-etco’) to purchase 100% of the capital stock of Slidell Cablevision, Inc. (the ‘Company’).
We are willing to pay a total of $6,000 in cash at closing for all the outstanding capital stock of the Company subject to the following conditions: .
4. Within 45 days from the date hereof, Wometco and the stockholders of the Company shall enter into a formal purchase agreement containing terms and conditions necessary to protect the parties.”
From the wording of the document it is apparent that nothing more than an offer for the purchase of the said stock was conveyed, which, if validly accepted by the defendants would have obligated them to enter into a formal purchase agreement pursuant to provision four (4) for the trans-' fer of the stock. However, provision five (5) of the document further sets forth that Gunn and Luts were to enter into a consulting and non-competition agreement with Wometco for a period of three years. With respect to this provision the trial judge found that there was no mutuality of agreement between defendants Gunn and Luts and plaintiff. We are in agreement with this finding. The evidence establishes that the September 20th document was drafted by counsel for plaintiff and that the terms of the consulting and non-competition agreement were never set forth prior to termination of negotiations between the parties. Consequently, although Gunn and Luts seemingly accepted, as was evidenced by their signatures at the end of this document, they changed the terms of provision five (5) by printing in the words: “The non-competition agreement shall be for St. Tammany Parish only.” And this change was initialed by both defendants in the left margin of the page before the document was returned to Wometco by mail.
Article 1805 of the Civil Code provides in part: “The acceptance to form a *880 contract must be made in all things conformable to the offer; . . . ” and Article 1806 further provides: “The modification or change of the proposition is, in all respects, considered as a new offer, and the party making it, is bound by the acceptance in the same manner as if the original proposition had been made by him.” Thus, under Louisiana Law, the initialed change made by the defendants was equivalent to a new offer or a counter-offer on their behalf, which required acceptance by the plaintiff for the perfection of a valid and binding contract. The evidence reveals that the document was never initialed by any representative of the plaintiff, Wometco. Thus, there was no express acceptance on plaintiff’s part.
Plaintiff asserts, however, that its assent to the modification of the acceptance was implied by its actions. Civil Code Article 1807 provides:
“When, however, from the circumstances of the case, the offer necessarily implies an assent to the modification of the acceptance, then the obligation is complete, although there be a difference in terms between the one and the other. . . ”
We cannot agree with this contention. Rather than simply initial provision five (5) of the September 20th document and return it to the defendants thus evidencing plaintiff’s acceptance, Mr. Lewis, Wometco’s president, chose to mail the formal purchase agreement which incorporated the change contemplated by the defendants in provision five (5) of the former document. Additionally, the latter document, which was mailed on October 1st, increased the duration of the non-competition and consulting agreement to five years. It was never signed by any Wometco representative nor was it signed by either of the defendants. Under these circumstances we are unable to conclude that plaintiff’s actions implied an assent to the defendants’ modification of the acceptance.
Further, there is creditable evidence of record which would justify the trial court’s finding that no verbal acceptance was ever made by plaintiff of the counter-offer made by defendants Luts and Gunn.
Plaintiff next asserts that provision five (5) of the September 20th document was a purely accidental provision which should not invalidate the contract in its entirety. Civil Code Article 1764(3) defines accidental stipulations as those “ . which belong neither to the essence nor the nature of the contract, but depend solely on the will of the parties. . . . ” This contention is untenable because paragraph two of the document conditions payment of the purchase price upon the fulfillment of provisions one (1) through five (5). Consequently, if provision five (5) is not met, the contract is invalid by its very terms. Since provision five (5) is one which is of the essence of the contract and not one which is dependent solely on the will of the parties, it is not an accidental stipulation within the meaning of Article 1764(3).
For the above-mentioned reasons we hold that the finding of the trial court, that there was no mutuality of agreement and, thus, no binding promise to sell under Civil Code Article 2462 and no binding contract of sale under Civil Code Article 2439, is correct.
Having concluded that plaintiff had no valid contract with defendants Gunn and Luts, we need not consider whether the defendant, Ralph Agee, was a good faith third party purchaser.
For the above and foregoing reasons the judgment of the trial court in favor of defendants, Joseph L. Luts, Larry E. Gunn, Ralph Agee, and Harry Bennett, and against plaintiff, Wometco Communications, Inc., dissolving the temporary restraining order and denying plaintiff’s claim for a preliminary and permanent injunction is hereby affirmed.
AFFIRMED.